Stephen Paul PARKER,
Plaintiff–Appellant,

v.

CHESTER MENTAL HEALTH
CENTER., et al., Defendants–
Appellees.

No. 03–4219.

United States Court of Appeals,
Seventh Circuit.

Submitted Nov. 30, 2004.*

Decided Dec. 1, 2004.

Stephen P. Parker, Dixon Correctional Center, Dixon, IL, pro se.

Deborah L. Ahlstrand, Office of the Attorney General, Chicago, IL, for Defendant–Appellees.

Before RIPPLE, KANNE, and WILLIAMS, Circuit Judges.

## ORDER

Stephen Paul Parker is currently serving a 30–year Illinois sentence for aggravated sexual assault. By his own account, though, Parker was deemed incompetent to stand trial for several years before his 1994 conviction, and during that time he

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

was committed to the custody of the Illinois Department of Human Services for treatment. It also appears from his complaint that Parker was housed at an IDHS facility for approximately nine months in 2002 after he was found incompetent to stand trial on charges that he assaulted a guard at the Dixon Correctional Center sometime in 2001. In this action under 42 U.S.C. § 1983, which Parker filed from Dixon in October 2003, he claims that he was denied equal protection during his periods of confinement within IDHS because he was housed in higher security facilities than female patients. He explains that IDHS officials shuttled him back and forth between medium and maximum security facilities because he was accused of fighting and stalking, despite the fact that none of the women he knew at IDHS were housed in maximum security facilities. Parker also alleges that he was assaulted by guards at the Will County Adult Detention Facility in 1991, and by the Dixon guard who accused him of assault in 2001. The district court dismissed Parker's complaint prior to service for failure to exhaust administrative remedies, *see* 42 U.S.C.1997e(a), but also noted that much of Parker's complaint would be time barred because of the two-year statute of limitations for civil rights claims arising in Illinois, *see* 735 ILCS § 5/13–202; *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir.2001). We conclude that dismissal was appropriate, not for lack of exhaustion but because Parker's complaint fails to state a claim, and thus we modify the judgment to reflect a dismissal with prejudice.

Like his complaint, Parker's appellate brief is difficult to follow. He includes references to the alleged assaults in 1991 and 2001, but, limitations issues aside, none of the guards who were involved are named as defendants in Parker's complaint, and so we may ignore these incidents. *See Maxey v. Thompson*, 680 F.2d 524, 527 (7th Cir.1982) (affirming dismissal of section 1983 claim when plaintiff had not named proper defendants and had not sought to amend complaint to include them); *Moran v. Commanding Gen. of U.S. Army Fin. Ctr.*, 360 F.2d 920, 922 (7th Cir.1966) (affirming dismissal of complaint that failed to name defendant, as unnamed defendant is not a legal entity). The remainder of Parker's brief focuses on his periods of confinement in IDHS facilities, and on his contention that the district court erred in dismissing this claim for failure to exhaust administrative remedies.

When he filed his form complaint, Parker checked the "no" box beside the question asking whether there is a grievance procedure at his "institution." He also answered another question by representing that he complained by letter to the "civil rights offices" but received no response. The district court, apparently reading Parker's complaint to allege disparate treatment of male and female inmates of the Illinois Department of Corrections rather than the IDHS, assumed that Parker's answers to the questions on the complaint concerned the grievance procedures at Dixon. The court then took judicial notice that Dixon indeed has a grievance system and thus dismissed because Parker did not allege that he utilized it.

We cannot agree with the district court's exhaustion analysis, at least as it relates to the claim before us about Parker's periods of confinement in IDHS facilities. As a prisoner Parker was of course required to exhaust "available" administrative remedies before bringing suit about prison conditions, 42 U.S.C. § 1997e(a); *see Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001), but we think the district court misread Parker's complaint and thus failed to fully consider whether any administrative process was available to

him. As relevant here, Parker's complaint relates to the conditions of his confinement in IDHS facilities, not his confinement at Dixon or any prison within the Department of Corrections. What the district court did not consider is whether Parker could use the Dixon grievance system to complain about his treatment while in the custody of IDHS, a possibility that appears highly unlikely, *see* ILL. ADMIN. CODE tit. 20 § 504.800 ("This subpart applies to offenders assigned to correctional facilities within the Department of Corrections."). Nor did the court assess whether IDHS has a grievance system or, if so, whether Parker could still utilize it after his release from IDHS custody. *See Witzke v. Femal,* 376 F.3d 744, 753–54 (7th Cir.2004).

■ Failure to exhaust is an affirmative defense, *Massey v. Helman,* 196 F.3d 727, 735 (7th Cir.1999), and although a district court may invoke the defense *sua sponte* when lack of exhaustion is conceded or otherwise obvious from the face of the complaint, *Kalinowski v. Bond,* 358 F.3d 978, 978 (7th Cir.2004); *Walker v. Thompson,* 288 F.3d 1005, 1009 (7th Cir.2002), this was not such a situation. While it may be the case that further investigation would have established conclusively that Parker indeed had available administrative remedies that he failed to exhaust, the record before the district court was not sufficient to resolve the question without at least giving Parker an opportunity to articulate his position. *See Witzke,* 376 F.3d at 754. In this regard we note that Parker asserts in his brief on appeal that he lacked administrative remedies at IDHS. He also asserts that he did file grievances at Dixon in March 2001 and again in September 2003. We may be skeptical about the claimed absence of available remedies within IDHS, *see* ILL. ADMIN. CODE tit. 59 § 299.800, and, as we have suggested, what Parker did or could have done at Dixon may not matter since his claim is directed to conditions outside the Department of Corrections. But these are questions that needed to be resolved before deciding that this affirmative defense would be available to the defendants. Thus it was error to dismiss on the ground used by the district court.

■ Regardless, we do not think a remand is warranted because, having reviewed Parker's complaint, we conclude that it fails to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2). Parker alleges no injury or disparate treatment apart from being shuttled back and forth between IDHS facilities, yet he had no constitutionally protected right to be confined in any particular institution or to be housed in the least restrictive environment. *See Meachum v. Fano,* 427 U.S. 215, 225–26, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Thielman v. Leean,* 282 F.3d 478, 482 (7th Cir.2002); *Maust v. Headley,* 959 F.2d 644, 647–49 (7th Cir.1992). Moreover, Parker admits in his complaint that he was moved to the highest security classification within IDHS because he was accused of fighting and stalking, and he offers no argument that the determination was made without due process. *West v. Schwebke,* 333 F.3d 745, 748–49 (7th Cir.2003). He does not allege that the facilities at the maximum security Chester Mental Health Center—the focus of his claim—are dissimilar in any relevant respect to other facilities where women are housed. *See Madyun v. Franzen,* 704 F.2d 954, 961–62 (7th Cir.1983).

Because our analysis addresses the merits of Parker's equal protection claim, we MODIFY the district court's judgment to make explicit that the dismissal is with prejudice. As so modified, the judgment is AFFIRMED.